# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## MOBILE DIVISION

| | |
|---|---|
| CRYSTAL ARD and MELISSA OWENS<br><br>        Plaintiffs,<br>v.<br><br>MCDONALD OIL COMPANY,<br><br>    Defendant. | CIVIL ACTION FILE NO:<br><br>1:21-cv-00509-__-__<br><br>JURY DEMAND |

## COMPLAINT[1]

## <u>NATURE OF THE ACTION</u>

This is an action under Title VII of the Civil Rights Act of 1964, *as amended,* 42 U.S.C. §2000e et seq., and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a, to correct unlawful employment practices on the basis of sexual harassment, gender (female), and retaliation, and to provide appropriate relief to Crystal Ard and Melissa Owens, who were adversely affected by such practices because of their gender at Defendant's Orange Beach, Alabama location for conduct in violation of Title VII.

---

1 Plaintiffs intend to file a motion for consolidation with *Equal Employment Opportunity Commission v. McDonald Oil Company,* Case 1:21-cv-00407-CG,  which arises out of the same facts and circumstances as this action.

**JURISDICTION AND VENUE**

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(l) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e-5(f)(1) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. 1981a.  This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S. Code § 1367 in that they are so related to claims in the action that they form part of the same case or controversy. This supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the Southern Division of the United States District Court for the Southern District of Alabama.

**PARTIES**

3.      Plaintiff Crystal Ard is a female adult resident of Robertsdale, Baldwin County, Alabama who is over the age of 18 and a former employee of the Defendant.

4.      Plaintiff Melissa Owens is a female adult resident of Orange Beach, Baldwin County, Alabama who is over the age of 18 and a former employee of the

Page 2 of 24

Defendant.

5.      Defendant McDonald Oil Company is a Georgia corporation doing business as a foreign corporation in Alabama with its principal place of business located at 1700 W Lukken Industrial Drive, Lagrange, Troup County, Georgia 30240. There, it may be served through its Registered Agent and Chief Financial Officer, Scott A. Gordy.

6.      Defendant is a corporation operating as a petroleum marketer and convenience store purveyor that has owned and operated as many as 56 convenience stores and fuel stations in Georgia, Alabama, and Florida.

7.      Defendant is a corporation that owns and operates fuel stations and convenience stores under the name Summit Food Stores, a Shell-branded operator in Georgia and Alabama.

8.      At all relevant times, Defendant has continuously had over fifteen (15) employees.

9.      At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

10.     On September 17, 2020, Plaintiff Ard filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") Mobile, Alabama local office alleging that during the time she worked for the Defendant, she experienced sex discrimination, sexual harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended.

11.     On September 17, 2020, Plaintiff Owens filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") Mobile, Alabama local office alleging that during the time she worked for the Defendant, she experienced sex discrimination, sexual harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended.

12.     On June 10, 2020, the EEOC issued a Letter of Determination in favor of Plaintiff Ard's Charge of being subjected to a sexually hostile work environment, saying:

> The evidence of record supports the Charging Party's allegation that she was subjected to a sexually hostile environment. The evidence further supports the conclusion that the male employee made sexual comments, propositioned, and inappropriately touched Charging Party, other female employees, and female customers. When Charging Party and others reported the

existence of the sexually hostile environment, their complaints were ignored by the Store Manager and the District Manager, and the harassment continued.

On June 10, 2020, the EEOC issued a Letter of Determination in favor of

Plaintiff Owens' Charge of being subjected to a sexually hostile work environment,

saying:

> The evidence of record supports the Charging Party's allegation that she and other female employees were subjected to a sexually hostile work environment. The evidence supports the conclusion that the male employee made sexual comments, propositioned, and inappropriately touched Charging Party, other female employees, and female customers. When Charging Party and others reported the existence of the sexually hostile environment, their complaints were ignored by the Store Manager and the District Manager, and the harassment continued.

13.     On July 23, 2021, the EEOC issued to Defendant a Notice of Failure of

Conciliation regarding each Charge, advising Defendant that the EEOC was unable

to secure from Defendant conciliation agreements acceptable to the EEOC.

14.     All conditions precedent to the institution of this lawsuit have been

fulfilled.

## **FACTS**

15.     From at least as early as June 2020, and continuing until late August

2020, Defendant has engaged in unlawful employment practices at its Orange Beach, Fairhope, and Spanish Fort gas station and convenience store locations in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a).

16.     Specifically, Defendant subjected Plaintiffs and other employees to severe, pervasive, unwanted, humiliating, degrading and offensive sexual conduct, based on their sex (female).

17.     The unlawful sexual harassment, which was perpetrated by Defendant's employee, Billy McKinney, included, but was not limited to, the following sexually charged conduct that created a hostile work environment based on sex:

18.     From his first encounters with the Plaintiffs and on each occasion he worked with them, McKinney made inappropriate comments of a sexual nature to Plaintiffs, or about other female employees, or female customers, in the presence of Plaintiffs. Many of these incidents were also witnessed by other employees.

19.     On their first day working together, McKinney approached Ard when she arrived in the parking lot to start her shift and said, "I don't see how one female can be with just one man and have the same d**k." He told her that he could not be with just one woman or the same woman. He said this without introducing himself and without any invitation or provocation from Ard to engage in a discussion of a

Page 6 of 24

sexual nature.

20.     Later that same day, McKinney followed Ard out of the store on her smoke break and told her that he was married but had been separated for five years. McKinney went on to say that his wife would not divorce him because she "wants more of this 9-inch d**k." Ard immediately complained to Store Manager Tonia Hartman and offered to write a statement which Hartman told her was unnecessary because she would handle it. Instead, Hartman took no action.

21.     Over approximately the next two weeks, McKinney constantly made unwelcomed, lewd comments to Ard about her or to her regarding female employees or customers such as "shake that ass" or "hm, like them titties bounce" or "umm humm" in a sexual tone when she walked by him.

22.     On one occasion, McKinney threw a sausage onto the counter in front of Ard and another employee and then remarked that the other employee needed "some weenie" in her life.

23.     Starting from his first day working with Owens, McKinney made ongoing unwelcomed sexual comments to her. For example, McKinney told Owens in a sexual tone that he wanted to "give her a workin' out" as her personal trainer and made a sexual gesture with his tongue. He also frequently remarked about her "rack"

and made comments to her such as "look at that ass" and "you're shaped like a brick s\*\*t house."

24.     Store Manager Hartman witnessed several of these comments and heard complaints from Plaintiffs, female customers, and other employees about McKinney's sexual comments but took no action to discipline McKinney or remedy the harassment. Instead, Hartman made light of McKinney's conduct calling him "different" and explaining that he was "from California."

25.     McKinney obtained Owens phone number from a work-related group text. He then sent Owens sexually provocative text messages including asking her to be "friends with benefits" with him.

26.     Starting the first day McKinney worked with Owens and on multiple subsequent shifts, he touched her in a physically threatening and sexual manner. He deliberately came into her work area for no reason except to pass by her and touch her in a sexually inappropriate manner three to four times a shift whenever they worked together. He brushed by her chest, grabbed her hips and rubbed his genitals against her buttocks while smirking and saying, "excuse me." Owens immediately complained to management, including District Manager Mike McDonald, but McDonald took no action to stop McKinney's harassment.

27.    Worried for her personal safety and the safety of other female employees and customers, Owens obtained a full criminal background check on McKinney. After discovering that he had served time in prison in California for assaulting his wife, she showed the report to Hartman and McDonald on or around July 4, 2020. Even with this knowledge, Defendant took no measures to protect female employees from further unwanted sexual conduct by McKinney.

28.    McKinney also touched Ard in a physically threatening and sexual manner. On or around July 6, 2020, McKinney entered the kitchen for no reason other than to walk behind Ard and forcibly touch her against her will. McKinney grabbed her hips and pushed his genitals into her buttocks. He did this multiple times that day despite Ard telling him to stop and immediately reporting it to her supervisors Hartman and McDonald. He continued groping Ard even after another female employee who witnessed Ard become upset by this conduct also reported it that same day to Hartman and McDonald. Management did not discipline McKinney or otherwise act to prevent further harassment.

29.    McKinney touched other employees and female customers in a sexually inappropriate manner against their will by pressing his genitals against their buttocks, putting his hands around their waist, or grabbing their buttocks which was

unwelcomed, physically threatening and humiliating to them. McKinney got in the

personal space of one female employee and made lewd comments such as how he

liked her "titties" and wanted to put his face on the breasts of female customers.

30.    McKinney constantly talked about his sexual activities. For example,

he told another employee that he took this job to have money to pay prostitutes, that

he wore a "G" string, had an "enlarged clitoris" and worked a side job as a stripper.

He also told another employee he could "work off" her baby weight after she gave

birth, implying by having sex with him.

31.    McKinney followed Plaintiffs and other employees into the parking lot

or around the store in a stalking manner with no legitimate purpose to be near them.

32.    McKinney also solicited  female employees to have sex with him. He

asked one to "go up on the roof and mess around" and asked her what she would do

if he touched her. She told him not to touch her and complained to Store Manager

Rhonda Rose who took no action to prevent further harassment.

33.    McKinney asked female employees about their sex lives, whether they

had a boyfriend, and asked if they would have sex with him.

34.    McKinney told employees that Defendant hired him knowing that he

had "mental health issues."

35.     McKinney sent a female employee a photograph of his genitals with only a small cloth covering his penis.

36.     McKinney frequently removed his shirt on the premises and walked around the parking lot. He also disrobed and walked around the parking lot in a tight "speedo" style swimsuit or underwear in front of customers and employees.

37.     When female employees were discussing how some customers were scantily dressed, McKinney interjected, "You should have told me. I would have f"*ked them in the parking lot."

38.     McKinney inappropriately touched a female customer around her waist which prompted her fiancé to complain to Ard.  Ard reported this harassment and gave the fiancé's contact information to McDonald and Hartman who did not discipline McKinney or take any action to prevent further harassment.

39.     In the presence or hearing of at least one female employee, on one occasion, McKinney made a comment to an elderly female employee who came daily to the store that he could massage her. This prompted her to rush out of the store while he yelled after her not to rush off because "this could have been a good time." She stopped coming to the store.

40.     Plaintiffs and other employees saw, heard, or became aware that

McKinney flashed teenage customers and offered to have sex with them or offered to pay for their merchandise if they had sex with him, and asked them about their sex lives.

41.     McKinney did not treat male employees in the same manner as Plaintiffs and other female employees and customers as described above.

42.     On or around August 25, 2020, Owens called Defendant's CEO, Tim Huff, and complained about McKinney's sexual harassment and how District Manager Mike McDonald was aware of the hostile work environment but had not handled the situation. She described details of McKinney's harassment including grabbing her by the hips, grabbing a customer inappropriately, and walking around in a speedo style swimsuit or underwear on the premises. She also told Huff that McKinney got her phone number from a work-related group text and sent her "dirty" text messages.

43.     On or around August 26, 2020, McKinney sent a direct message to Store Manager Hartman on Facebook that included two nude photos of himself, including one of his penis and a statement, "Which one of you said I think I'm god[']s gift to women[?] It[']s because I have a big cock." Hartman showed this message to Ard and sent it to McDonald. Despite having direct knowledge of this egregious

harassment, Defendant permitted McKinney to work two shifts around female employees and customers before terminating him.

44.     Store Manager Hartman filed a police report regarding this Facebook message McKinney sent her which resulted in McKinney being criminally charged, convicted, and sentenced to a fine and 30 days in jail.

## COUNT I
## INVASION OF PRIVACY
### (Crystal Ard)

45.     Plaintiff Ard adopts and incorporates the facts set out above in support of this count.

46.     Billy McKinney's intentional invasion of Plaintiff Ard's privacy by subjecting her to offensive and unwanted sexual overtures and making inquiries into her sex life proximately caused her to suffer great emotional distress, embarrassment, humiliation, loss of reputation, trauma, and mental anguish. Defendant allowed this acts.

47.     Defendant condoned, authorized, and/or ratified McKinney's unlawful conduct and is directly liable for the acts of its representatives, Mike McDonald and Tonia Hartman, and proximately caused Plaintiff Ard to suffer emotional distress,

embarrassment, humiliation, loss of reputation, trauma, and mental anguish.

48.   Defendant's conduct offended and embarrassed Plaintiff Ard.

49.   Defendant's actions toward Plaintiff Ard were taken while its representatives were acting in the role as her supervisors.

50.   Defendant ratified and permitted McKinney's conduct.

51.   Defendant is liable for the conduct of McKinney.

52.   Defendant injured Plaintiff Ard.

## COUNT II
## INVASION OF PRIVACY
### (Melissa Owens)

53.   Plaintiff Owens adopts and incorporates the facts set out above in support of this count.

54.   McKinney's intentional invasion of Plaintiff Owens' privacy by subjecting her to offensive and unwanted sexual overtures and making inquiries into her sex life proximately caused her to suffer great emotional distress, embarrassment, humiliation, loss of reputation, trauma, and mental anguish. Defendant allowed these acts.

55.   Defendant condoned, authorized, and/or ratified McKinney's unlawful conduct and is directly liable for the acts of its representatives, Mike McDonald and

Tonia Hartman, and proximately caused Plaintiff Owens to suffer emotional distress, embarrassment, humiliation, loss of reputation, trauma, and mental anguish.

56.   Defendant's conduct offended and embarrassed Plaintiff Owens.

57.   Defendant's actions toward Plaintiff Owens were taken while its representatives were acting in the role as her supervisors.

58.   Defendant ratified and permitted McKinney's conduct.

59.   Defendant is liable for the conduct of McKinney.

60.   Defendant injured Plaintiff Owens.

## COUNT III
## OUTRAGE
### (Crystal Ard)

61.   Plaintiff Ard adopts and incorporates the facts set out above in support of this count.

62.   Defendant acted intentionally to inflict emotional distress on Plaintiff Ard.

63.   Defendant's actions toward Plaintiff Ard were taken while their representatives were acting in their role as her supervisors.

64.   Defendant ratified and permitted the conduct.

65.   Defendant is liable for the conduct of McKinney.

66.      Defendant injured Plaintiff Ard.

## COUNT III
## OUTRAGE
**(Melissa Owens)**

67.      Plaintiff Owens adopts and incorporates the facts set out above in support of this count.

68.      Defendant acted intentionally to inflict emotional distress on Plaintiff Owens.

69.      Defendant's actions toward Plaintiff Owens were taken while their representatives were acting in their role as her supervisors.

70.      Defendant ratified and permitted the conduct.

71.      Defendant is liable for the conduct of McKinney.

72.      Defendant injured Plaintiff Owens.

## COUNT IV
## NEGLIGENT/WANTON SUPERVISION, TRAINING, AND RETENTION

73.      Plaintiffs adopt and re-allege the paragraphs above as if fully set forth in full herein.

74.      This is a claim arising under the laws of the State of Alabama to redress the negligent and wanton hiring, training, supervision and retention of

Defendant.

75.      Defendant had a duty to provide a reasonably safe, non-hostile and non-discriminatory work environment to its employees, including Plaintiffs.

76.      Defendant had a duty to provide the Plaintiffs with a reasonably safe work environment and to follow its own policies and procedures prohibiting gender harassment and discrimination in the workplace. Further, Defendant had a duty to follow the law.

77.      Defendant failed to establish an adequate policy against harassment, failed to implement such policy consistently, failed to regularly and clearly communicate policy to its agents and employees, and failed to train and enforce its own policies to the detriment of the Plaintiffs.

78.      Defendant failed to educate and train managers, supervisors, and employees on harassment and discrimination, invasion of privacy, assault, and outrage.

79.      As an approximate result of the Defendant's conduct, Plaintiffs were caused to suffer embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish.

80.      Defendant knew, or should have known, of the conduct of

McKinney.

81.        Defendant negligently supervised, trained, and/or retrained Mike McDonald and Tonia Hartman.

82.        Defendant maliciously, deliberately, wantonly and/or negligently retained employees who engaged in tortious and/or illegal conduct, including, but not limited to McKinney.

83.        Defendant failed to protect employees, including Plaintiffs, from the tortious treatment described in this Complaint.

84.        As a result of the inaction by Defendant, Plaintiffs were injured.

**COUNT V**
**SEXUAL HARASSMENT**
**Title VII of the Civil Rights Act of 1964**
**(Crystal Ard)**

85.        Plaintiff Ard adopts and incorporates the facts set out above in support of this count.

86.        Defendant empowered McDonald and Hartman with supervisory authority over Plaintiff Ard.

87.        Defendant subjected Plaintiff Ard to severe, offensive, degrading, and unwanted conduct based on her gender, female.

88.       The unlawful sexual harassment, which was perpetrated by Defendant, included, but was not limited to, the following unwelcomed conduct that created a hostile work environment based on sex.

89.       The conduct to which Defendant subjected Plaintiff Ard was severe, persuasive, and intentional.

90.       The conduct to which Defendant subjected Plaintiff Ard affected and altered her work environment.

91.       Defendant injured Plaintiff Ard by subjecting her to sexually harassing conduct.

<u>**COUNT VI**</u>
<u>**SEXUAL HARASSMENT**</u>
<u>**Title VII of the Civil Rights Act of 1964**</u>
**(Melissa Owens)**

92.       Plaintiff Owens adopts and incorporates the facts set out above in support of this count.

93.       Defendant empowered McDonald and Hartman with supervisory authority over Plaintiff Owens.

94.       Defendant subjected Plaintiff Owens to severe, offensive, degrading, and unwanted conduct based on her gender, female.

95.     The unlawful sexual harassment, which was perpetrated by Defendant, included, but was not limited to, the following unwelcomed conduct that created a hostile work environment based on sex.

96.     The conduct to which Defendant subjected Plaintiff Owens was severe, pervasive, and intentional.

97.     The conduct to which Defendant subjected Plaintiff Owens affected and altered her work environment.

98.     Defendant injured Plaintiff Owens by subjecting her to sexually harassing conduct.

<u>**COUNT VII**</u>
<u>**RETALIATION**</u>
<u>**Title VII of the Civil Rights Act of 1964**</u>
**(Crystal Ard)**

99.     Plaintiff Ard adopts and incorporates the facts set out above in support of this count.

100.    Plaintiff Ard engaged in activity protected by Title VII of the Civil Rights Act of 1964, as amended by complaining to Defendants about the gender harassment and hostile work environment created by McKinney.

101.    Defendant's conduct proximately caused the Plaintiff Ard to suffer

embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish.

102.   After Plaintiff Ard engaged in protected activity, Defendant constructively discharged her employment.

103.   Defendant constructively discharged Plaintiff Ard's employment after she was forced to endure a hostile sexually charged work environment.

104.   Plaintiff Ard did not abandon her job.

105.   Plaintiff Ard's protective activity caused her constructive discharge.

### COUNT IX
### RETALIATION
### Title VII of the Civil Rights Act of 1964
### (Melissa Owens)

106.   Plaintiff Owens adopts and incorporates the facts set out above in support of this count.

107.   Plaintiff Owens engaged in activity protected by Title VII of the Civil Rights Act of 1964, as amended by complaining to Defendants about the gender harassment and hostile work environment created by McKinney.

108.   Defendant's conduct proximately caused the Plaintiff Owens to suffer embarrassment, humiliation, loss of reputation, emotional distress, trauma, and

mental anguish.

109.   After Plaintiff Owens engaged in protected activity, Defendant constructively discharged her employment.

110.   Defendant constructively discharged Plaintiff Owens' employment after she was forced to endure a hostile sexually charged work environment.

111.   Plaintiff Owens did not abandon her job.

112.   Plaintiff Owens' protective activity caused her constructive discharge

**WHEREFORE**, Plaintiff prays for the following relief:

A)   Grant Plaintiffs' anticipated motion to consolidate this action with *Equal Employment Opportunity Commission v. McDonald Oil Company Case* 1:21-cv-00407- CG;

B)   Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in sexual harassment;

C)   Order Defendant to institute and carry out policies, practices, and programs which provide a workplace free from sexual harassment, require employees, managers, and officers to undergo training on

preventing and recognizing sexual harassment, provide multiple avenues for employees and customers to report sexual harassment, and train managers and officers to promptly act to remedy sexual harassment;

D)    Order Defendant to make whole Plaintiffs by providing, as appropriate, compensation for past and future nonpecuniary losses resulting from the aforementioned unlawful practices, including emotional pain, distress, suffering, inconvenience, and humiliation, in amounts to be determined by a jury at trial;

E)    Order Defendant to pay Plaintiffs punitive damages for its malicious and reckless conduct that allowed a hostile work environment to continue;

F)    A finding that Defendants willfully violated the Title VII of the Civil Rights Act of 1964, as amended;

G)    An award of attorney's fees and costs; and

H)    Grant such further relief as this Court deems necessary, just, and proper in the public interest.

**THE PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE TO A JURY.**

Respectfully submitted this the 1st day of December 2021.

*/s/ Adeash Lakraj*[2]
Adeash A.J. Lakraj
GA Bar No. 444848
alakraj@theleachfirm.com
**THE LEACH FIRM, P.A.**
631 S. Orlando Ave, Suite 300
Wells Fargo Building
Winter Park, FL 32789
Telephone:  770-728-8478, Ext. 43
Facsimile:   833-423-5864

*/s/ Henry Brewster*
Henry Brewster (BREWH7737)
HENRY BREWSTER, LLC
205 N. Conception Street
Mobile, AL 36603
Phone: 251-338-0630
Email: hbrewster@brewsterlaw.net

*Counsel for Plaintiff*

Defendant May Be Served At:

McDonald Oil Company, Inc.
c/o CT Corporation System
2 North Jackson St. Suite 605
Montgomery, AL 36104

---

2   Adeash A.J. Lakraj will be filing a Motion for Admittance Pro Hac Vice.

Page 24 of 24